IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **COMPUCOM SYSTEMS, INC.**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-3625-L** |
| | § | |
| **WJ GLOBAL, LLC,** | § | |
| | § | |
| Defendant. | § | |

## <u>ORDER</u>

Before the court is Plaintiff CompuCom Systems, Inc.'s Motion for Entry of Default Judgment ("Motion") (Doc. 47), filed October 9, 2015; and Plaintiff CompuCom Systems, Inc.'s Expedited Motion to Release or Reduce Preliminary Injunction Bond (Doc. 52), filed January 20, 2017. On June 21, 2016, Magistrate Judge Paul D. Stickney entered the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 50), recommending that the court grant in part and deny in part the Motion. Specifically, the magistrate judge recommended that the court grant the Motion as to liability with respect to Plaintiff's breach of contract claim but deny the Motion with respect to its request for declaratory relief and deny as moot the Motion with respect to its request for an accounting.[*] The magistrate further recommended that the court defer ruling on the amount of damages that Plaintiff is entitled to for its contract claim until after Plaintiff submits supplemental briefing establishing the reasonableness of the attorney's fees requested.

---

[*]In its objections to the Report, Plaintiff clarified that it was not seeking entry of a default judgment on its request for accounting and other matters originally included in Plaintiff's pleadings with respect to its request for declaratory relief. Accordingly, the court focuses only on the claims for which Plaintiff seeks a declaratory judgment in its Motion.

**Order – Page 1**

On July 8, 2016, Plaintiff CompuCom Systems, Inc. ("Plaintiff" or "CompuCom") filed objections regarding the Report's recommendation as to its request for declaratory relief and attorney's fees. After considering the motions, Plaintiff's pleadings and evidence, the Report, and conducting a de novo review of that portion of the Report to which objection was made, the court, for the reasons herein explained, **accepts as modified** the Report, **overrules** Plaintiff's objections, and **denies without prejudice** Plaintiff's Motion (Doc. 47), except for Plaintiff's contract claim based on WJ Global's failure to pay its subcontractors, which is **denied**. Further, the court **denies without prejudice** Plaintiff CompuCom Systems, Inc.'s Expedited Motion to Release or Reduce Preliminary Injunction Bond (Doc. 52).

## I.      Standard of Review

A magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). As explained by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions. [T]he abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotation marks omitted).  As Plaintiff's request for entry of a default judgment against Defendant is dispositive, the court will conduct a de novo review of the Report.

## II.     Motion for Default Judgment

### A.     Standard for Default Judgment

The magistrate judge set forth the correct legal standard for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b).  Accordingly, the court need not repeat that legal standard for purposes of ruling on CompuCom's Motion and objections to the Report.

### B.     Breach of Contract

The magistrate judge found that Plaintiff's pleadings satisfied the requirements for its breach of contract claim and recommended that the court grant Plaintiff's Motion as to liability with respect to Plaintiff's breach of contract claim.  Although CompuCom did not object to this finding or recommendation, the court believes this issue warrants further discussion and **rejects** the magistrate judge's finding that Plaintiff's pleadings satisfy the requirements for its breach of contract claim based on Defendant WJ Global, LLC's ("Defendant" or "WJ Global") breach of the parties' contract. In its Motion, CompuCom seeks a default judgment on its contract claim to recover damages sustained for the following alleged material breaches by WJ Global of the parties' contractual agreements: (1) Defendant's failure to pay its subcontractors under the Subcontractor Master Agreement ("Master Agreement") and related statements of work ("SOW" or "SOWs"); (2) Defendant's failure to indemnify CompuCom "when presented with a claim or demand arising from an act or omission in WJ Global's relationship with its subcontractors"; (3) Defendant's failure to provide CompuCom with a release of liens by WJ Global and its subcontractors; and (4) Defendant's

refusal or failure to provide requested information timely regarding it subcontractors and their claims at the request of CompuCom.  Pl.'s Br. 4.

As correctly noted by the magistrate judge, the elements for breach of contract under Texas law are as follows: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach." *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc*., 48 S.W.3d 225, 235 (Tex. App.—San Antonio 2001, pet. denied).  There are five elements of a contractual indemnity claim under Texas law: (1) a contractual indemnity agreement exists; (2) the indemnity agreement obligates one party to indemnify the other for particular claims; (3) those claims were made; (4) all conditions precedent for recovery have occurred or been waived or excused; and (5) the party seeking relief has been damaged. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995) (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. App.—Corpus Christi 1965, writ ref'd n.r.e.)).  The court determines as a matter of law what the contract requires of the parties. *See Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied). When the terms of a contract are clear and unambiguous, and the facts concerning breach or performance are undisputed or conclusively established, the issue of whether the facts show performance or breach is also decided as a matter of law. *Id.*  A breach of contract also occurs when one party to a contract prevents another party to the contract from performing its side of the bargain. *See Texas Nat'l Bank v. Sandia Mortg. Corp*., 872 F.2d 692, 699 (5th Cir.1989).  The "party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Associated Indem. Corp. v. CAT Contracting, Inc*., 964 S.W.2d 276, 283 (Tex. 1998). "A condition precedent is an act or event that must take place before performance of a contractual obligation is

due." *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007); *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). "[T]o determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications Eng'r, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010); *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Indemnity agreements are construed under the normal rules of contract construction. *Associated Indem. Corp.*, 964 S.W.2d at 284.

Because of its default, Defendant is deemed to have admitted the allegations set forth in the Plaintiff's Complaint ("Complaint"). Nonetheless, the court must review the pleadings to determine whether Plaintiff can establish a viable claim for the relief sought. *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Plaintiff's pleadings are sufficient to establish the existence of valid contracts entered into between CompuCom and WJ Global that include the Master Agreement and several SOWs. In addition, the Master Agreement contains an indemnity provision. The court's concern rests with the remaining requirements for Plaintiff's contract claim.

### 1.    Failure to Pay Subcontractors under Master Agreement and SOWs

In its Motion, Plaintiff cites to paragraph 61 of its Complaint to support its contention that WJ Global breached the parties' contract(s) by failing to pay subcontractors. CompuCom also relies on other evidence, to the extent necessary, in support its Motion and the relief requested. Paragraph 61 of the Complaint states: "WJ Global materially breached the contract. Among other things, WJ Global breached its representations, warranties, and obligations by failing to pay its subcontractors and by failing to provide to CompuCom release of liens from WJ Global itself and from its subcontractors." Pl.'s Compl. ¶ 61. The Complaint does not contain information from which the

court can determine what WJ Global's obligations were with respect to paying it subcontractors, and the court was unable to find any provision in the Master Agreement or SOW (Doc. 7-2) that requires WJ Global, as part of its agreement with CompuCom, to pay its subcontractors.   Moreover, CompuCom does not contend that it has standing to assert any claim based on agreements between WJ Global and its subcontractors under which WJ Global presumably agreed to pay its subcontractors in exchange for services rendered. Accordingly, CompuCom is not entitled to entry of a default judgment on this contract claim, and Plaintiff's Motion with respect to this claim is **denied**.  *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (setting forth the factors for determining whether entry of a default judgment is appropriate and explaining that any doubts as to the propriety of a default judgment should be resolved in favor of the defendant).

## 2.        Breach of Indemnity Provision

Plaintiff seeks a default judgment against WJ Global on its claim for breach of contract based on breach of the indemnity provision.  Under the Master Agreement, WJ Global agreed to provide certain services in exchange for payment by CompuCom.  Regarding general payment terms, section 2.1 states:

> In consideration of [WJ Global's] satisfactory performance, CompuCom shall pay [WJ Global]  according to the payment terms set forth in the applicable [SOW]. Vendor shall submit invoices on a monthly basis for Services furnished during the preceding month, unless otherwise stated in such [SOW], and each invoice shall reference the applicable [SOW] and include supporting detail and documentation of all charges. All amounts are due and payable in U.S. dollars, unless otherwise agreed by CompuCom in writing, within sixty (45) forty-five days from the date on which CompuCom receives a correct invoice from Vendor.

Pl.'s App. 16 (Doc. 7-2).  The foregoing reference in section 2.1 to "sixty (45) forty-five days" appears to be a typographical error, and the court assumes for purposes of this order that payment

was due 45 days from the date CompuCom received a "correct invoice" from WJ Global.  *See id.*

The indemnification provision in section 11.1 of the Master Agreement provides in pertinent part:

> Vendor [WJ Global] will indemnify, defend (at CompuCom's request) and hold
> CompuCom, Clients, and their respective Representatives harmless from any and all
> claims or demand (including all losses, damages, and liabilities resulting from such
> claims or demands, and all related costs and expenses, including reasonable
> attorney's fees and expenses) ("Claims") arising from or in connection with (a)
> Vendor's performance of, or failure to perform any of its obligations under this
> Agreement; (b) an act or omission of [WJ Global] in its relationship with its
> Representatives or suppliers; (c) breach of any of Vendor's representations or
> warranties under this Agreement; . . . or (f) claims by Vendor's Representatives.
> Notwithstanding the foregoing, Vendor Indemnification and hold harmless
> obligations under . . . Section 11.1(f) above shall not apply if CompuCom, Clients
> or any of their respective officers, directors, or employees is the sole cause of the
> Claim.

*Id.* at 16.  In its Motion, Plaintiff contends that WJ Global breached section 11.1(b) of the indemnity

provision by failing to indemnify CompuCom when presented with a claim or demand arising from

WJ Global's acts or omissions in its relationship with its subcontractor. According to CompuCom,

the acts or omissions refer to WJ Global's failure to pay its subcontractors.

As noted, section 11.1(b) applies to "an act or omission of [WJ Global] in its relationship

with its Representatives or suppliers." *Id.*  The Master Agreement does not appear to define the term

"Representatives" and, when discussing WJ Global's subcontractors and personnel, the Master

Agreement does not use the term "Representatives." *See id.* at 13 (§ 3 "Use of Subcontractors by

Vendor"; § 4.1-4.3 "Vendor Personnel; Performance. . . . CompuCom reserves the right to

reasonably determine the quality of Vendor's performance (including the performance of any

approved subcontractors)"). The court, therefore, questions whether section 11.1(b) applies to a

"Claim" arising from an act or omission of WJ Global in its relationship with its subcontractors.

Moreover, Plaintiff's pleadings and evidence are insufficient to establish that it performed or tendered performance under the Master Agreement and that all conditions precedent for recovery have occurred or been waived or excused.   Regarding performance, CompuCom alleges in its Complaint that it paid WJ Global certain amounts and that it "continuously made *progress payments* for *properly submitted invoices for which there is no dispute*."   Pl.'s Compl. 5 (emphasis added). CompuCom's evidence similarly contains evidence that it made payments in certain amounts, some of which were made shortly before Plaintiff filed this action.

Such allegations and evidence, however, do not demonstrate that CompuCom complied with its material payment obligations or that its performance of its payment obligations was excused or waived.   Section 2.1 of the Master Agreement does not state that payment may be withheld if invoices are disputed; nor does it state that the parties contemplated continuous "progress payments" by CompuCom.   Instead, section 2.1 requires CompuCom to pay amounts owed to WJ Global "within . . . (45) forty-five days from the date on which CompuCom receives a correct invoice from Vendor." Pl.'s App. 12.   Plaintiff's evidence contains information regarding payment amounts and payment dates but does not include information regarding invoice dates from which the court can determine whether payments were made timely.

It is evident from Plaintiff's allegations and evidence that CompuCom did not comply with this provision because Plaintiff acknowledges that it withheld $309,012.63 in amounts owed to WJ Global, and its evidence shows there were delays in paying prior invoices submitted by WJ Global, which according to WJ Global constituted a material, uncured breach of CompuCom's payment obligations under section 2.1, for which written notice was given.   *See* Pl.'s App. 55 (Doc. 7-3). In a declaration submitted by Plaintiff, Karly Curtis ("Curtis") states that there were delays in paying

WJ Global's invoices submitted May through July 2014 for services related to Dick's Sporting Goods because WJ Global did not "correctly submit[]" invoices and some invoices included "incorrect pricing" or "formatting was an issue." Pl.'s App. 155 (Doc. 7-6). While section 2.1 states that CompuCom must pay WJ Global within 45 days of receiving a "correct invoice," the court was unable to find any specific requirements in the Master Agreement or SOW regarding the "correct" manner for submitting invoices.   In this regard, the Master Agreement merely states that "CompuCom shall pay Vendor according to the payment terms set forth in the applicable [SOW]"; and unless otherwise stated in a SOW, "each invoice shall reference the applicable [SOW] and include supporting detail and documentation of all charges." Pl.'s App. 12 (Doc. 7-2).

Regardless, the formatting and other "billing issues" referenced in Curtis's declaration would not constitute material breaches of the Master Agreement by WJ Global that would excuse CompuCom's payment obligations or entitle it to withhold or delay payment. Pl.'s App. 155 (Doc. 7-6). After reviewing the parties' entire agreement set forth in the Master Agreement and the sample SOW submitted by Plaintiff, the court also concludes that CompuCom's payment obligations were a condition precedent to any indemnification obligation of WJ Global, particularly to the extent that CompuCom seeks indemnification for claims by WJ Global's Representatives or subcontractors. *Solar Applications Eng'r, Inc.*, 327 S.W.3d at 109. To conclude otherwise would lead to the absurd result whereby CompuCom could materially breach the parties' agreement with impunity by failing to make payments to WJ Global, causing WJ Global to default on its payment obligations to subcontractors, resulting in the filing of liens and claims against WJ Global, CompuCom, and CompuCom's clients. *See Mobil Chem. Co. v. Blount Bros. Corp.*, 809 F.2d 1175, 1182 (5th Cir. 1987) ["The district court held: 'It is inconceivable that Blount would have agreed to indemnify

Mobil for damages resulting from its [Mobil's] own breaches of contract.' We agree. Mobil's interpretation is completely artificial in the context of the entire contract."); *see also Marquette Transp. Co. v. La. Mach. Co.*, 367 F.3d 398, 408 (5th Cir. 2004) ("If Quality had been found to be in breach of [its warranty duties under the contract], perhaps our application of the indemnity clause would be different. As Quality apparently met its duties under the contract, however, it is entitled to indemnification from Marquette for the costs and expenses caused by the latter's suit."). The court's conclusion that CompuCom's payment obligations were a condition precedent to WJ Global's indemnification obligation in this case is also consistent with the language in section 11.2 that states the indemnity obligations under this provision do not apply to claims by WJ Global's Representatives if CompuCom is the "sole cause of the Claim." Pl.'s App. 16 (Doc. 7-2).

Accordingly, resolving all doubts in favor of Defendant, the court concludes that entry of default judgment against WJ Global on this claim is not appropriate based on Plaintiff's pleadings and evidence. *See Lindsey*, 161 F.3d at 893. Plaintiff's Motion with respect to this claim is, therefore, **denied without prejudice**.

Any amended motion for default judgment submitted by Plaintiff must be supported by evidence that shows the dates and amounts of invoices received and the dates and amounts of payments made by CompuCom. If payments were delayed, Plaintiff's evidence must include an explanation for why its performance was excused or waived. Additionally, the court will require evidence that shows CompuCom cured the material breaches alleged by WJ Global, as this goes to the essence of the parties' dispute.

### 3.     Failure to Provide Release of Liens

CompuCom contends in its Complaint and Motion that "WJ Global materially breached the contract" by failing to provide CompuCom with a release of liens for WJ Global and its subcontractors. Regarding the release of liens, the Complaint states:

> The August 28, 2013 Statement of Work regarding the project for Client ATC and end customer STF provided in applicable part that:
>
> Vendor [WJ Global] will be responsible for providing to CompuCom release of lien(s) from Vendor or Vendor's suppliers(s) [sic] for any claims related to construction or electrical work, consistent with the Indemnification clause in Subcontractor Master Agreement."

Pl.'s Compl. ¶ 14.  Even assuming that all of the SOWs executed between Plaintiff and Defendant contain this same language, the Complaint and corresponding SOW (Doc. 7-2) that is quoted in the Complaint both make clear that any release of liens is tied to "the Indemnification clause in Subcontractor Master Agreement," and the court, for the reasons already explained, has determined that material fact issues exist regarding Plaintiff's entitlement to relief based on the indemnification provision in the Master Agreement.  *See Lindsey*, 161 F.3d at 893.  In addition, this release of lien language applies only to WJ Global and its "suppliers," not WJ Global's subcontractors, and review of the parties' Master Agreement and SOW reveal that the terms subcontractors and suppliers are not synonymous.  Accordingly, entry of default judgment against WJ Global on this claim is not appropriate.  *Id.*  Plaintiff's Motion with respect to this claim is, therefore, **denied without prejudice**.

### 4.    Refusal to Provide Requested Information Timely Regarding Subcontractor Claims

Plaintiff contends that WJ Global materially breached the parties' contract when it "refused to timely provide information relating to its subcontractors and their claims at the request of CompuCom." Pl.'s Br. 4.   Plaintiff similarly alleges in its Complaint that WJ Global materially breached the parties' contract by refusing to "cooperate in providing information to CompuCom in its efforts to resolve the issues in this matter [regarding liens] in breach of its agreements with CompuCom. Pl.'s Compl. ¶¶ 19, 49.   Plaintiff alleges that WJ Global was obligated to provide this information pursuant to the "Further Assurances" provision in the Master Agreement.

The court agrees that the Further Assurances provision applies to the information requested by CompuCom; however, resolution of this issue will likewise require the court to first determine whether CompuCom performed its payment obligations under the Master Agreement, and, if not, whether its performance in this regard was excused. Moreover, Plaintiff's pleadings and evidence do not establish that CompuCom suffered the type of damages recoverable for breach of contract or that the damages sustained resulted from WJ Global's failure to provide requested information "timely," especially since Plaintiff acknowledges that WJ Global provided information as ordered by the court.   In addition, the Master Agreement does not set forth a deadline for providing requested information or assurances and does not state that time is of the essence regarding the parties' performance of this obligation.   Accordingly, entry of default judgment against WJ Global on this claim is not appropriate. *See Lindsey*, 161 F.3d at 893.   Plaintiff's Motion with respect to this claim is, therefore, **denied without prejudice**.

### C.        Request for Declaratory Judgment

Under the federal Declaratory Judgment Act, a federal court may "declare the rights and other legal relations" of parties in "a case of actual controversy." 28 U.S.C. § 2201. The controversy must be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tenn. Valley Auth*., 297 U.S. 288, 325 (1936). An actual controversy exists when "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests."  *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986). The issue of whether particular facts are sufficiently immediate to establish an actual controversy is determined on a case-by-case basis. *Orix Credit Alliance, Inc. v.* Wolfe, 212 F.3d 891, 896 (5th Cir.2000) (citations omitted).

In its Motion, Plaintiff requests declaratory relief to: (1) confirm its "right to withhold as a setoff . . . $309,012.63" in funds previously withheld and its right to "withhold future payments from WJ Global . . . and use such funds to set off the amounts CompuCom pays and/or has paid to WJ Global's subcontractors and the amounts CompuCom and or its clients reasonably incurred as a result of WJ Global's failure to pay its subcontractors, including but not limited to any necessary attorney's fees and costs," Pl.'s Br. 6; and (2) confirm CompuCom's contractual right to be indemnified in accordance with the Master Agreement by WJ Global for future claims and demands made by WJ Global's subcontractors.  The magistrate judge recommended that the court deny Plaintiff's request for declaratory relief because it cannot be reasonably inferred from the Complaint and record in this case that there is a continuing controversy, particularly in light of Defendant's October 31, 2014 letter notifying the court that WJ Global ceased its daily operations and terminated the parties' contract as of October 9, 2014.

Plaintiff objected to this portion of the Report, contending that, under section 15.2 of the Master Agreement, the indemnity provision survives any termination of the parties' agreement by WJ Global.  Plaintiff contends that declaratory relief is necessary to confirm its setoff rights with respect to its present and continuing withholding of $309,012.63 from WJ Global following its breach of the parties' contract, resolve the current dispute, and preclude later litigation over the money. Alternatively, Plaintiff contends that the court should adjust its damages award by subtracting this amount from any award. Plaintiff contends that, if the court does not confirm its setoff rights by declaratory judgment, it should award CompuCom an additional sum of $309,012.63. According to CompuCom, this would allow it to apply this sum withheld to the judgment as a setoff such that the net amount of the judgment is the same. Regarding indemnity rights, CompuCom contends that declaratory relief is necessary to confirm its continuing indemnity rights against WJ Global.  Plaintiff asserts, "Much like a policy coverage lawsuit for insurance, the declaratory relief requested here is that WJ Global is required, under the parties' contractual indemnity clause, to indemnify and defend CompuCom (and CompuCom's clients) for claims and demands arising from WJ Global's failure to pay its subcontractors."  Pl.'s Obj. 5.

For the reasons previously explained, the court has concerns regarding Plaintiff's contract claim based on indemnification, and those same concerns apply to the related declaratory relief requested by Plaintiff.  These concerns are not alleviated by the survival clause in the Master Agreement, which applies to terminations of the parties' agreement, as opposed to the issue of whether CompuCom performed as required under the contract or whether its performance was excused.  Plaintiff's contention that it should be awarded a judgment that includes the $309,012.63 withheld if the court does not confirm its setoff rights by declaratory judgment is also perplexing,

as such an award or judgment would entitle CompuCom to recover from WJ Global additional monies for which it is not out-of-pocket. Further, although Plaintiff contends that it may be "is exposed to an additional $446,036.98 in *potential claims* from WJ Global's unpaid subcontractors," the court concludes that such *potential claims* do not constitute a substantial controversy of sufficient immediacy and reality between the parties, particularly in light of the statement by WJ Global that the information provided to CompuCom, from which Plaintiff calculated the potential claims, included paid and unpaid matters and bills that may or may not be valid and approved for payment. Pl.'s Br. 8 (emphasis added); Pl.'s App. 31 ("To be clear, these bills may or may not be valid and approved."). Accordingly, any decree by the court in this regard would be inappropriate, as it would be advisory in nature and based on a hypothetical state of facts.  Accordingly, the court **overrules** Plaintiff's objections and **denies without prejudice** Plaintiff's Motion for a default judgment on the requested declaratory relief.

### D.       Request for Attorney's Fees and Objections

Plaintiff seeks a total of $260,237.64 in reasonable attorney's fees and expenses. The magistrate judge recommended that the court defer ruling on Plaintiff's request for attorney's fees pending supplementation of Plaintiff's Motion to establish the reasonableness of the requested fees and expenses under applicable law. Plaintiff objected to the magistrate judge's recommendation. The court's determination that CompuCom is not entitled to a default judgment moots this objection by Plaintiff, which is **overruled as moot**.

### III.    Motion for Release or Reduce Bond

As the court has determined that Plaintiff is not entitled to default judgment on its breach of contract claim and request for declaratory judgment, the court **denies without prejudice** Plaintiff's

motion to release or reduce the bond paid it with respect to the temporary restraining order and preliminary injunction entered by the court.  The court will enter an order releasing the bond if: (1) it determines at a later date that Plaintiff is entitled to a default judgment on its breach of contract claim or request for declaratory judgment; or (2) the case is dismissed either by order of the court or upon request of Plaintiff, at which time the court will vacate the preliminary injunction and order the release of the bond.

## IV.    Conclusion

For the reasons stated, the court **concludes** that entry of a default judgment against WJ Global is not justified based on CompuCom's pleadings and evidence and, therefore, **declines** to exercise its discretion to enter a default judgment against WJ Global.  Accordingly, the court **accepts as modified** the magistrate judge's findings and conclusions, **overrules** Plaintiff's objections to the Report, **denies without prejudice** Plaintiff CompuCom Systems, Inc.'s Motion for Entry of Default Judgment (Doc. 47), except for Plaintiff's contract claim based on WJ Global's failure to pay its subcontractors, which is **denied**; and **denies without prejudice** Plaintiff CompuCom Systems, Inc.'s Expedited Motion to Release or Reduce Preliminary Injunction Bond (Doc. 52).

**It is so ordered** this 31st day of March, 2017.

Sam A. Lindsay
United States District Judge